EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

and

Kevin Armstrong, Intervening Plaintiff,

v.

NORTHWEST AIRLINES,
INC., Defendant.

No. 00–2916 Ma/A.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 30, 2002.

Faye A. Williams, Esq., Katharine W. Kores, Esq., Terry L. Beck, Esq., Deidre Smith, Equal Employment Opportunity Commission, Memphis, TN, for Equal Employment Opportunity Commission, plaintiff.

Herbert E. Gerson, Esq., Thomas J. Walsh, Jr., Esq., Timothy S. Bland, Esq., Ford & Harrison, LLP, Memphis, TN, for Northwest Airlines, Inc., defendant.

James Allen, Memphis, TN, pro se.

Robert Di Trolio, Memphis, TN, pro se.

Joe L. Wyatt, McWhirter & Wyatt, Memphis, TN, for Kevin Armstrong.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO CONTINUE TRIAL AND OTHER PRE–TRIAL MATTERS

MCCALLA, District Judge.

Before the Court is Defendant's Motion for Summary Judgment, filed on December 31, 2001. Plaintiff Equal Employment Opportunity Commission (the "EEOC") and Intervening Plaintiff Armstrong responded separately to this motion on February 4, 2002.[1] Defendant replied to Plaintiffs' responses on February 25, 2002. Because Plaintiffs have demonstrated the existence of a genuine issue of material fact as to whether Northwest Airlines ("NWA") regarded Mr. Armstrong as disabled, the Court DENIES Defendant's motion.

## I.  Facts

This case arises from Defendant's withdrawal of a conditional offer of employment to Mr. Armstrong in June, 1998. The material, undisputed facts in this case are as follows.

Defendant is a commercial airline, which operates a hub in Memphis. (Compl. ¶¶ 4, 6.) There is no dispute that Defendant has at all relevant times been a covered entity under Section 101(2) of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12111(2). (Compl. ¶ 6; Ans. ¶ 7.) The EEOC is a federal agency charged with enforcing Title I of the ADA. (Compl. ¶ 3.) Mr. Armstrong resided in Memphis, Tennessee when he applied for a position as an Equipment Service Employee ("ESE") with Defendant. (Armstrong Dep., pp. 7–9.)

Mr. Armstrong was diagnosed with Type I diabetes mellitus at age nine. (Def.'s Statement of Und. Facts ¶ 24.) Dr. Lisa Myers, a Memphis endocrinologist, began treating Mr. Armstrong in May, 1997. (Id. ¶ 25.) Dr. Myers noted after Mr. Armstrong's first visit that his diabetes was poorly controlled. (Id. ¶ 27.) On several other occasions, Dr. Myers noted that Mr. Amstrong's blood sugar was in "fair," "poor," or "very poor" control. (Id.

---

1. The Court will refer to Plaintiff EEOC and Intervening Plaintiff Armstrong collectively as "Plaintiffs."

¶ 37; Exh. 1 to Def.'s Mot. for Summ. Judg.)

At the time Mr. Armstrong applied to work as an ESE for Defendant, he had a habit of eating meals at irregular intervals and he was injecting himself with insulin at least twice daily. (Def.'s Statement of Und. Facts ¶¶ 46, 47.) Before Mr. Armstrong can ingest food, he must prick his finger in order to draw a sample of blood to test his sugar level and analyze the food to be consumed in accordance with diabetic nutrition guidelines. (Dr. Levin Dep., pp. 116–7.)[2] Mr. Armstrong testified that it only takes a minute and a half to check his blood sugar. (Armstrong Dep., pp. 153–54.) In addition, Mr. Armstrong must always plan his meals in order to insure proper control over his blood sugar levels throughout the day. (Dr. Levin Dep., pp. 116–7.)

Mr. Armstrong testified that the only symptoms he experiences from low blood sugar are weakness and trembling. (Armstrong Dep., p. 159.) He explained that he always carries pieces of hard candy in order to raise his blood sugar, which take effect within five minutes. (Id. at 188–89). Mr. Armstrong reported that he has not experienced significant blood sugar fluctuations at work that have caused him to stop working, nor has he experienced any blurred vision or loss of consciousness. (Id. at 190–91.)

Mr. Armstrong held several jobs before applying to work as an ESE for Defendant. On two occasions he worked as a sacker at a grocery store. (Def.'s Statement of Und. Facts ¶ 61.) He worked briefly for a construction company and as

a clerk for Sears. (Id. ¶ 62.) Mr. Armstrong also did seasonal work as a package courier for UPS. (Id. ¶ 63.) He worked for Phoenix Airline Services, which operates under the name "Northwest Air Link," in 1997, as an ESE. (Id. ¶¶ 65, 67.) In January 1998, Mr. Armstrong was hired by Air Tran to work as an ESE in Memphis. (Id. ¶ 74.)

On January 21, 1998, Mr. Armstrong applied for an ESE position with Defendant at its Memphis hub. (Id. ¶ 106.) The duties of a Northwest Airlines ESE in Memphis include handling baggage on the tarmac, transporting luggage in and out of aircraft bins and between aircraft and baggage areas of the terminal, guiding planes in and out of their parking places, and de-icing planes when needed. (Id. ¶ 84.) Essential functions of the ESE position include operating heavy equipment, working at unprotected heights, and regular heavy lifting. (Id. ¶ 85.) ESE's are exposed to all weather conditions, chaotic working conditions, sustained loud noises, and exhaust fumes. (Id. ¶¶ 92, 93.) The ESE position is a dangerous and demanding job, requiring a high level of visual acuity, constant alertness, and quick reaction time. (Id. ¶ 98.)

When completing the application form for the ESE position at Northwest Airlines, Mr. Armstrong indicated that he is not disabled. (Id. ¶ 108; Exh. 4 to Def.'s Mot. for Summ. Judg.) Defendant extended a conditional job offer to Mr. Armstrong on January 29, 1998, which was rejected. (Def.'s Statement of Und. Facts ¶ 115.) In late April or early May of 1998,

---

**2.** On July 16, 2002, Judge Mays entered an order denying Defendant's motion to strike the testimony of Dr. Levin from consideration in relation to the motion for summary judgment. The Court denied the motion to strike testimony because it is capable of weighing the credibility of each portion of Dr. Levin's

report separately. The portions of Dr. Levin's expert report cited in the Facts section of this opinion are those based on Dr. Levin's knowledge of the treatment of diabetes generally. The Court has not relied on the portions of his report in which he draws conclusions about Mr. Armstrong's condition specifically.

Mr. Armstrong again applied for the ESE position, and Defendant again extended a conditional offer. (*Id.* ¶¶ 116, 117.) His employment was conditioned on the satisfactory completion of a pre-placement physical examination and drug test, as well as a background investigation. (*Id.* ¶ 117.)

Mr. Armstrong reported for a physical examination at a medical clinic in Memphis. (*Id.* ¶ 119.) As a part of his pre-placement physical examination, Mr. Armstrong completed a medical history form, in which he reported that he was a diabetic and that he had a history of two open-heart surgeries. (*Id.* ¶ 120.) He indicated that he was in excellent health. (*Id.*)

Records of the pre-placement physical examination and the medical history form were forwarded to Dr. Kevin O'Connell at the Airport Medical Clinic in Minnesota.[3] (*Id.* ¶ 122.) Dr. O'Connell asked Mr. Armstrong to submit additional records concerning whether his diabetes was in good control and the status of his heart condition. (*Id.* ¶ 132.) Mr. Armstrong had delivered to Dr. O'Connell certain lab reports from Dr. Myers' records. (*Id.* ¶ 136.) After reviewing the records sent by Mr. Armstrong, Dr. O'Connell concluded that his poorly controlled diabetes prevented him from operating heavy equipment and working at unprotected heights. (*Id.* ¶ 138.) He advised Defendant accordingly. *Id.* Dr. O'Connell then spoke on the telephone with Mr. Armstrong about his conclusions and the basis for them. (*Id.* ¶ 141.) Mark Williams, Defendant's resources generalist, called Mr. Armstrong to advise him of the restrictions and invited him to engage in an interactive process to determine if any reasonable accommodations could be made to allow him to perform the functions of an ESE safely. (*Id.* ¶ 143.)

Mr. Williams confirmed the phone conversation by letter dated June 22, 1998. (*Id.* ¶ 144.) Mr. Armstrong responded by letter dated July 2, 1998, stating that he could see no reason why his diabetes would preclude him from performing the duties of an ESE. (*Id.* ¶ 146.) He enclosed a form on which he wrote "no accommodation needed." (*Id.*) Upon receiving Mr. Armstrong's response, Defendant effectively withdrew its conditional offer. (*Id.* ¶ 148, n. 5.)

Mr. Armstrong then filed a charge with the EEOC alleging Defendant violated the ADA. (Compl. ¶ 7.) On September 27, 2000, the EEOC filed the Complaint in this case under the authority granted it in Section 107(a) of the ADA, 42 U.S.C. § 12117(a). On January 30, 2001, Mr. Armstrong was allowed to intervene as a party plaintiff, and to adopt by reference the allegations set forth in the Complaint.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion

---

**3.** The physicians at the Airport Medical Clinic who serve Defendant, Dr. O'Connell and Dr. David Zanick, both specialize in occupational and aviation medicine. (*Id.* ¶ 126.) Both doctors are very familiar with the essential functions and physical requirements of the ESE position. (*Id.* ¶ 128.)

for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

Plaintiffs assert that Defendant deprived Mr. Armstrong of equal employment opportunities in its refusal to hire him because of a disability. (Compl.¶¶ 13–16.) Plaintiffs contend that this deprivation constitutes an unlawful employment practice in violation of the ADA, 42 U.S.C. § 12112(a) (1994). (Compl.¶ 16.)

The ADA requires covered entities to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

■ To establish a *prima facie* case of employment discrimination based on disability, Plaintiffs must show that: 1) Mr. Armstrong is an individual with a disability as defined by the statute; 2) he is otherwise qualified to perform the job requirements of an ESE, with or without reasonable accommodation; 3) he suffered an adverse employment decision; 4) Defendant knew or had reason to know of his disability; and 5) the position remained open after the adverse employment decision. *Swanson v. University of Cincinnati,* 268 F.3d 307, 314 (6th Cir.2001); *Mon-*

*ette v. Electronic Data Sys. Corp.* 90 F.3d 1173, 1185 (6th Cir.1996). If Plaintiffs establish a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *Monette,* 90 F.3d at 1179. If Defendant meets that burden, Plaintiffs must show that the proffered explanation is a pretext for unlawful discrimination. (*Id.*)

Defendant argues that it is entitled to summary judgment for four reasons: 1) Mr. Armstrong is not ADA-disabled, and therefore cannot establish a *prima facie* case under the ADA; 2) Defendant did not withdraw its conditional offer *because of* a disability, but rather because of his poorly controlled diabetes, which made him unqualified to perform the essential functions of the job and posed a safety risk to himself, his co-workers, and the public; 3) Mr. Armstrong's refusal to engage in the ADA-mandated interactive process precludes him from pursuing his claim; and 4) Defendant had a legitimate business reason for not hiring Mr. Armstrong. (Def.'s Mot. for Summ. Judg., pp. 3–4.)

Disability is defined under the ADA as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; 2) a record of such impairment; or 3) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). In this case, Plaintiffs assert that Mr. Armstrong was ADA-disabled under either the first or third definitions. Specifically, Plaintiffs assert that Mr. Armstrong is substantially limited in the major life activities of eating and self care as a result of his diabetes.[4] (Pl. EEOC's Mem. in Opp. to Def.'s Mot. for Summ. Judg., p. 6; Intervening Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. Judg., p. 3.) Alternatively, Plaintiffs argue

---

4. The EEOC asserts that Mr. Armstrong is substantially limited in the major life activities of eating and self care. Mr. Armstrong, however, only asserts that he is substantially limited in the major life activity of eating.

that Defendant mistakenly regarded Mr. Armstrong as substantially limited in the major life activities of working, walking, seeing, and speaking. (*Id.*)

Under the first definition of disability, Plaintiffs must initially prove that Mr. Armstrong has a physical or mental impairment. *See* 42 U.S.C. § 12102(2)(A). Plaintiffs must then demonstrate that the impairment substantially limits at least one of his major life activities. *Id.*

██ Defendant does not contest that Mr. Armstrong's diabetes constitutes a physical impairment for ADA purposes. *See also Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827, 831 (8th Cir. 2000) (noting that insulin-dependent diabetes is a "recognized impairment[ ]" and collecting cases). Defendant also does not dispute that eating and self care are major life activities. *Lawson v. CSX Transportation, Inc.,* 245 F.3d 916, 923 (7th Cir. 2001) (determining that eating is a major life activity for ADA purposes); *Erjavac v. Holy Family Health Plus,* 13 F.Supp.2d 737, 747 (N.D.Ill.1998) (deciding that eating and self care are major life activities). Defendant asserts, however, that there is no proof in the record indicating that Mr. Armstrong's diabetes substantially limits the major life activities of eating and self care.

In order to determine whether or not a particular person is substantially limited, it is necessary to make an individual assessment of the impact of that person's impairment. *Sutton v. United Air Lines,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see also Schaefer v. State Ins.*

*Fund,* 207 F.3d 139, 143 (2d Cir.2000) (holding that plaintiff bears the burden of proof on this issue). The Supreme Court recently determined that in order "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). The Supreme Court also recently held that, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity." *Sutton,* 527 U.S. at 482, 119 S.Ct. 2139.[5] The issue before the Court, therefore, is whether Mr. Armstrong has presented sufficient evidence that his insulin-regulated diabetes substantially limits the major life activities of eating and self care.

Plaintiffs assert that before Mr. Armstrong can ingest food, he must prick his finger in order to draw a sample of blood to test his sugar level and analyze the food to be consumed in accordance with diabetic nutrition guidelines. (Dr. Levin Dep., pp. 116–7.) In addition, they point to the fact that Mr. Armstrong must always plan his meals in order to insure proper control over his blood sugar levels throughout the day. (*Id.*)

Mr. Armstrong testified, however, that it only takes a minute and a half to check his blood sugar. (Armstrong Dep., pp.

---

**5.** The Supreme Court cites diabetes as an example in explaining why it is inappropriate to judge a person's abilities in their uncorrected or unmitigated state. "[U]nder this view, courts would almost certainly find all diabetics to be disabled, because if they failed to monitor their blood sugar levels and adminis-ter insulin, they would almost certainly be substantially limited in one or more major life activities. A diabetic whose illness does not impair his or her daily activities would therefore be considered disabled simply because he or she has diabetes." *Sutton,* 527 U.S. at 483, 119 S.Ct. 2139.

153–54.) He also testified that the only symptoms he experiences from low blood sugar are weakness and trembling. (Armstrong Dep., p. 159.) He explained that he always carries pieces of hard candy in order to raise his blood sugar, which take effect within five minutes. (*Id.* at 188–89). Mr. Armstrong reported that he has not experienced significant blood sugar fluctuations at work that have caused him to stop working, nor has he experienced any blurred vision or loss of consciousness. (*Id.* at 190–91.) The record shows that Mr. Armstrong has held numerous jobs involving manual labor, evidently without diabetes-related problems. (Def.'s Statement of Und. Facts ¶¶ 61–63, 65, 67, 70, 74.)

Mr. Armstrong's testimony reveals that the food restrictions cited by Plaintiffs are no more complicated or demanding than those undertaken by the millions of Americans who attempt to control their weight through diet, for example. The injection of insulin several times a day, by Mr. Armstrong's own admission, does not interfere with his ability to engage in any major life activities. On the occasions when his blood sugar fluctuates, Mr. Armstrong is accustomed to eating a piece of candy, which eases his discomfort in a matter of minutes. Plaintiffs have submitted no other evidence leading the Court to believe that Mr. Armstrong's insulin-dependent diabetes is of sufficient severity as to render him substantially limited in the major life activities of eating and self care. *Cf. Sepulveda v. Glickman*, 167 F.Supp.2d 186, 191 (D.Puerto Rico 2001) (holding that plaintiff not substantially limited in any major life activities where he presented evidence only that he "requires medication, a fixed meal schedule, timely snack breaks, and the opportunity to use the bathroom very frequently during the work day"); *Fraser v. United States Bancorp*, 168 F.Supp.2d 1188, (D.Or. 2001) (finding plaintiff not *actually* substantially limited by insulin-dependent diabetes, only *potentially* limited in future if blood sugar not adequately controlled).

■ Moreover, when completing the application form for the ESE position at Northwest Airlines, Mr. Armstrong indicated that he is not disabled. (*Id.* ¶ 108; Exh. 4 to Def.'s Mot. for Summ. Judg.) He insists that he is capable of performing a wide range of tasks. (Armstrong Dep., pp. 111–12, 138–39, 144–45). Again, Mr. Armstrong's own testimony contradicts Plaintiffs' assertions regarding his substantial limitations in eating and self care. *See Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000) (most telling evidence that plaintiff not substantially limited was her own testimony that despite all of her ailments, she could still walk, swim, fish, and work 40–hour–week).

Plaintiffs rely mainly on *Lawson v. CSX Transportation, Inc.*, 245 F.3d 916 (7th Cir.2001), to support their argument that Mr. Armstrong's insulin-dependent diabetes is substantially limiting. Mr. Armstrong's condition, however, is distinguishable from Mr. Lawson's condition. Mr. Lawson "ha[d] a life-long medical history of Type I diabetes, he suffer[ed] from a number of diabetes-related medical problems, and the very medication that he use[d] to control his diabetes cause[d] severe symptoms that ha[d] potentially life-threatening consequences." *Lawson*, 245 F.3d at 926. As a result, the Seventh Circuit found that "the particular nature of Mr. Lawson's diabetes, even after treatment, could be said to significantly impair his daily activities ..." *Id.* There is no proof in this case that Mr. Armstrong's diabetes, after treatment, impairs his daily activities as the plaintiff in *Lawson*. Instead, Mr. Armstrong is in the category of diabetics described by the *Lawson* court

as those "who must follow simple 'dietary restrictions' that medical conditions sometimes entail." *Id.* at 924–25. Plaintiffs' citation to *Lawson*, therefore, does not dissuade the Court from its determination that Mr. Armstrong is not substantially limited in the major life activities of eating and self care.

◼ Under the third definition of disability under the ADA, Plaintiffs must show that Defendant *mistakenly* believes that: 1) Mr. Armstrong has a physical impairment that substantially limits one or more major life activities; or 2) Mr. Armstrong has an actual, nonlimiting impairment that substantially limits one or more major life activities. *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139. Plaintiffs assert that although Mr. Armstrong suffers from a significant impairment, that impairment can be adjusted to any working environment. (Intervening Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. Judg., p. 8.) Accordingly, Plaintiffs argue that Defendant regarded Mr. Armstrong as substantially limited in the major life activity of working.[6] (Pl. EEOC's Mem. in Opp. to Def.'s Mot. for Summ. Judg. p. 11.)

The EEOC defines "substantially limits" in the context of the major life activity of working as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1998). Therefore, Plaintiffs bear the burden of establishing that Defendant regarded Mr. Armstrong as being precluded from a "class of jobs or a broad range of jobs in various classes," rather than simply "precluded from . . . one type of job, a specialized job, or a particular job of choice." *Ballard v. Vulcan Materials Co.*, 978 F.Supp. 751, 756 (W.D.Tenn.1997) (citing *McKay v. Toyota Motor Manufacturing*, 110 F.3d 369, 372 (6th Cir.1997)); *see also Sutton*, 527 U.S. at 492, 119 S.Ct. 2139.

◼ In order to carry this burden, Plaintiffs must submit "evidence, expert or otherwise, relating to [Mr. Armstrong's] vocational skills or training, the geographical area to which he has access, or the number and type of jobs which demand similar training from which he would also be disqualified because of his disability," as mistakenly perceived by Defendant. *Ballard*, 978 F.Supp. at 756. Analytically, meeting this burden is most crucial to set forth a prima facie case under the ADA.

Here, Plaintiffs assert that there is extensive evidence that Defendant regarded Mr. Armstrong as substantially limited in the major life activity of working. (Pl. EEOC's Mem. in Opp. to Def.'s Mot. for Summ. Judg., p. 11.) Plaintiffs argue that the work restrictions imposed by Defendant would exclude Mr. Armstrong "not only from thousands of ESE positions, but from any other positions such as mechanics, customer service agents, cleaner posi-

---

6. The EEOC also argues that Defendant regarded Mr. Armstrong as substantially limited in the major life activities of seeing, walking, and speaking. (Pl. EEOC's Mem. in Opp. to Def.'s Mot. for Summ. Judg., p. 12.) The EEOC points to the working restrictions imposed by Defendant, including that Mr. Armstrong should be restricted from driving, operating heavy equipment, and working at heights because he could suffer diabetic epi-sodes causing blurred vision, sudden incapacitation, or altered consciousness as evidence of Defendant's mistaken belief. *Id.* There is no evidence, however, supporting the assertion that Mr. Armstrong is substantially limited in the life activities of seeing, walking, and speaking. Intervening Plaintiff Armstrong specifically states that nothing in his medical records shows that he has a history of suffering from hypoglycemic comas.

tions ..." (*Id.*) Defendant's proposed restrictions that prohibited Armstrong from driving and operating heavy equipment and working at unprotected heights above five feet could indeed severely limit Armstrong from performing a wide range of jobs. Furthermore, Plaintiffs present evidence that *NWA believed Armstrong was always at risk of sudden incapacitation due to the threat of a hypoglycemic coma,* and that this conclusion formed the basis for their decision not to hire Armstrong. As Plaintiffs argue, such an inability could disqualify Armstrong from an array of jobs, not limited to the specific job of an ENE at NWA for which he applied. Additionally, Plaintiffs cite the testimony given by Mark Williams, NWA's human resources generalist stating that when he inquired of a NWA manager whether there were any jobs that Armstrong could perform in Memphis, he was told that no jobs were available. (Exh. 11, Williams Dep. 170–171.) *See Coleman v. Keebler Co.,* 997 F.Supp. 1102, 1114 (N.D.Ind.1998) (genuine issue of material fact existed as to whether employer regarded plaintiff as substantially limited in major life activity of working where employer concluded that plaintiff could not perform any available jobs in production plant). The Court agrees with the Plaintiffs that there is sufficient evidence to conclude that Defendant's proposed restrictions disqualify him from a broad class of jobs.

■ The Court next considers whether Armstrong was qualified to perform the functions of an ESE. The Court finds that Plaintiffs have adduced sufficient facts to show that Armstrong was indeed qualified for the position of ENE. Armstrong's job at Air Tran and Northwest Airlink were arguably similar to the one for which he applied at NWA. While at Airlink, his duties included loading and unloading airplanes, transferring luggage from one airplane to another and parking airplanes. (Exh. 2, Armstrong Dep.) After the planes came in, Armstrong handed the baggage down from the tail of the plane, operating seven to eight feet above the ground. (*Id.* 23–24.) At Air Tran, Armstrong operated push-backs, belt loaders, tows and bobtail trucks. (*Id.* 36.) During the time he worked at Northwest Airlink and Air Tran, he only missed one day of work related to his diabetes. (*Id.* 27–28, 38–39.) The "fact that an ADA plaintiff currently holds a position similar to the one from which he was previously terminated constitutes sufficient evidence to create an actual question as to whether the plaintiff was qualified to perform the essential functions of the job." *Holiday v. City of Chattanooga,* 206 F.3d at 644, 645 (6th Cir.2000).

■ After a plaintiff sets forth a prima facie case, it is necessary to move to the next state of the burden-shifting analysis, in which the employer must articulate a legitimate reasons for its decision. Defendant asserts the defense of safety as a legitimate non-discriminatory reason for not hiring Armstrong. NWA argues that they revoked the offer of employment to Armstrong because Armstrong posed a direct threat to the health and safety of himself and others due to the poor control of his blood sugar levels.

EEOC regulations identify the following factors to be considered in evaluating the direct threat defense: the duration of the risk; the nature and severity of the potential harm; the likelihood that the potential harm will occur; and the imminence of the potential harm. To make this determination, there must be an "individualized assessment of the individual's present ability to perform the essential function of the job" which must be founded on "a reasonable medical judgment that relies on the most current medical knowledge and/or

the best available objective evidence." 29 C.F.R. Section 1630.2(r).

In the case at bar, Plaintiffs set forth sufficient evidence such that a reasonable jury could conclude that an individualized assessment did not occur. Dr. O'Connell never personally examined Armstrong and reached his conclusion only after reviewing blood levels from a total of five lab reports. Dr. O'Connell never contacted Dr. Myers, Armstrong's treating physician, nor did he obtain a complete set of Armstrong's medical records. (Exh. 15, Dr. O'Connell Dep. 131–132.) Additionally, the Defendant's physicians never discussed with Armstrong his diabetes-related symptoms.

Plaintiffs set forth evidence that directly contradicts Defendant's assertion that Armstrong posed a direct threat. Specifically, Plaintiffs cite the fact that Armstrong was examined at the Baptist Minor Medical facility in Memphis and was recommended for the position of ENE during his pre-employment examination. Additionally, Dr. Myers, Armstrong's treating physician testified that so long as Armstrong checks his blood sugar and has access to food he could perform the job. She further testifies that she has written two letters to Armstrong's prospective employers advising them that Armstrong could do the respective jobs and that if NWA had ever contacted her, she would have discussed Armstrong's blood sugar levels with her. In her deposition, Dr. Myers asserts that Dr. O'Connell misinterpreted the references to poor control in the lab reports he reviewed. (Exh. 9, Myers Dep. 157–168.)

■ Plaintiffs have presented sufficient evidence to show that Mr. Armstrong was regarded as disabled and that he was qualified to perform the job of an ENE at Northwest Airlines. Therefore, Plaintiffs have stated a *prima facie* case of disability discrimination under the ADA. Moreover, Defendants have failed to carry their burden of proving that Armstrong posed a direct threat in setting forth a legitimate, non-discriminatory reason why he was not hired.[7]

## IV. Motion to Continue Trial and Other Pre–Trial Matters

Also before the Court is Defendant's Motion to Continue Trial and Other Pre–Trial Matters. Defendant contends that maintaining the current trial date of October 21 would cause it to incur time and expense involved in trial preparation prior to receiving a ruling on its summary judgment motion. Given that the Court has now ruled on Defendant's Motion for Summary Judgment, the Court DENIES Defendant's Motion to Continue Trial and Other Pre–Trial Matters.

## V. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment and DENIES Defendant's Motion to Continue Trial and Other Pre–Trial Matters.

---

**7.** The Court acknowledges that there is disagreement between the parties over whether or not Defendant or Plaintiff failed to cooperate in the interactive accommodation process pursuant to the Act. Since the Defendant has not met their burden in proving direct threat, the Court will not address this issue at this time.