**Lonnie HODGE, Plaintiff,**

v.

**HENRY COUNTY MEDICAL CENTER, Defendant.**

**No. 02–1162–M1.**

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 3, 2003.

Justin Gilbert, Esq., Michael L. Russell, The Gilbert Firm, Jackson, TN, for Plaintiff.

Paul E. Prather, Esq., J. Edward Wise, Esq., Robert D. Meyers, Esq., Kiesewetter Wise Kaplan Schwimmer & Prather, Memphis, TN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCCALLA, District Judge.

This case is before the Court on Henry County Medical Center's Motion for Summary Judgment, filed June 30, 2003. Plaintiff responded in opposition on July 29, 2003.[1] For the following reasons, the Court DENIES Defendant's motion.

## I. Background

Plaintiff suffers from Crohn's disease, which is an inflammatory disease of the gastrointestinal tract that causes Plaintiff to have to go to the bathroom more often than most people. According to his doctor, Plaintiff suffers from "one of the most virulent forms of Crohn's disease", has digestive problems with certain foods and problems with eliminating waste. Plaintiff can not eat certain foods, such as spicy food, high residue food, greasy food, fried food, raw fruits, raw vegetables, peanuts, popcorn, hot peppers, onions, cumin, cinnamon, sage, or jalapeno peppers. When his condition is active, Plaintiff may have to go to the bathroom five or six times per day, instead of one or two. He also goes to the bathroom four or five times per day for gas. Plaintiff has had to go to the bathroom as many as forty times per day when his condition is active and has had to go to the bathroom during sex.

Plaintiff sometimes has diarrhea. According to his doctor, he has had seven episodes of small bowel obstruction "which, for the most part, required him to go into the hospital, have a tube stuck down his nose and be treated for several days to get over the obstruction." Plaintiff has had three surgeries to remove scar tissue from his intestine. As a result of these surgeries, Plaintiff has twelve less feet of intestine than the average person. There is no cure for Crohn's disease

Plaintiff applied for employment at Henry County Medical Center ("HCMC") in August, 1999. During the application process, Plaintiff advised HCMC that he has Crohn's disease and that he might have to go to the bathroom more often than most people. Plaintiff's Crohn's disease did not present any problems for Jim Perry, Plaintiff's supervisor, or Darryl Wilson, the other communications technician, and HCMC hired Plaintiff as a communications technician in September of 1999. It is undisputed that Plaintiff was a good worker, who was very productive and received high scores on his performance evaluations. On HCMC's performance evaluations, Mr. Perry indicated on successive evaluations that Plaintiff was an "excellent partner and a true asset to [the] department and the medical center."

---

1. Counsel for HCMC submitted, by letter dated September 25, 2003, the case of *Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682 (8th Cir. 2003). The Court has reviewed and considered that case.

In April or May of 2000, Plaintiff requested leave to have corrective surgery for a scar tissue blockage in his intestine. The parties agree that Mr. Perry was understanding at the time Plaintiff requested leave. Mr. Perry granted Plaintiff's leave request and Plaintiff began FMLA qualifying leave on May 14, 2001. While Plaintiff was on unpaid leave, Mr. Wilson took over part of Plaintiff's responsibilities, however, he could not keep up with all of the work. HCMC fell behind on repairs, maintenance, and upgrades to its communications systems.[2]

Plaintiff testified that around July 16 he inquired about leave policies that would extend beyond the leave already taken because he was going to need additional time to recover from surgery. On July 30, 2001, Dr. Wruble, Plaintiff's physician, advised HCMC that Plaintiff had experienced a flare-up of his Crohn's disease and Dr. Wruble could not determine when Plaintiff would be able to return to work. Dr. Wruble drafted a letter stating, "At this time we are not able to determine when [Lonnie Hodge] will be able to return to work." In early August, Mr. Perry met with Plaintiff and advised him that he needed to return to work by August 15, 2001 or he would be terminated because HCMC could not hold his position open any longer.[3]

HCMC is authorized to hire only two communications technicians. As long as someone was employed in each of the two budgeted positions, HCMC could not hire another communications technician. HCMC outsourced some projects, such as cabling, while Plaintiff was on leave. According to Mr. Perry, HCMC did not outsource everything while Plaintiff was on leave because HCMC operates on a budget and it is cheaper for HCMC to perform any work that it can. Mr. Perry also testified that HCMC did not consider hiring a temporary employee because it is hard to find good skilled technical people on a temporary basis. Similarly, Mr. Garner testified that HCMC did not explore the option of hiring a temporary employee because he "[did] not think you could find someone in our rural area that would come in on a part-time basis that had biomedical experience that would do that. It would have to be an outside contracted service for an individual, if that would be possible, and I don't know of a staffing agency where that would be possible." However, Mr. Garner also testified that it might have been possible to hold Plaintiff's position open for approximately two more months if HCMC had an indication that Plaintiff would be back within two months. According to Mr. Garner, the problem with keeping Plaintiff on leave beyond August 15, 2001 was the indefiniteness of the situation.

HCMC maintains that it terminated Plaintiff's employment effective August 18, 2001 so that it could create a position vacancy and hire someone to perform Plaintiff's job functions. HCMC hired Bob Dyer on September 4, 2001. On September 6, 2001, Plaintiff's physician released him to work on September 24, 2001. Plaintiff's wife delivered the release to HCMC on September 7, 2001. Although Plaintiff knew his employment had been terminated, he reported to work on September 24, 2001. Ed Ledden, the director of human resources, and Mr. Perry informed Plaintiff that he was eligible for continued employment and instructed him

---

2. HCMC asserts that it was warned by a state certification officer that the communications systems were at an unsatisfactory level.

3. HCMC could not have terminated Plaintiff's employment prior to August 15, 2001 because the FMLA mandated that HCMC rehire Plaintiff if he returned from leave within twelve weeks.

to check the bulletin boards for job opportunities for which he was qualified. Plaintiff and his wife regularly checked the job openings at HCMC, but he has not applied for any positions other than requesting reinstatement as a communications technician.

Plaintiff's Complaint alleges that Defendant violated the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101, the Tennessee Handicap Act, Tenn.Code Ann. § 8–50–103, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), when it terminated his employment. Defendant has moved for summary judgment as to all of Plaintiff's claims.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the mo-

tion." Kochins v. Linden–Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

Defendant has moved for summary judgment as to each of Plaintiff's claims.

### A. Disability Discrimination

In this case, Plaintiff argues that HCMC violated the ADA in two ways: (1) by failing to accommodate his disability; and (2) by terminating his employment solely because of his disability.

The ADA provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

[T]he term "discriminate" includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity;

42 U.S.C. § 12112(b)(5)(A).

In order to establish his claim that HCMC terminated his employment because of his disability, Plaintiff must meet the requirements of the burden shifting analysis initially set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Ac-

cordingly, Plaintiff must first set forth the elements of a *prima facie* case. To establish the elements of a *prima facie* case of disability discrimination, Plaintiff must show that (1) he is a disabled person within the meaning of the ADA, (2) he is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job, and (3) the employer terminated him because of his disability or refused to make a reasonable accommodation for his disability. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998); *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir.1997).

Plaintiff must also establish that he is a disabled person within the meaning of the ADA in order to recover on his claim of failure to accommodate. *Ameritech*, 129 F.3d at 866. Because these elements of Plaintiff's ADA claims are the same, the Court will discuss them simultaneously.

## 1. Disability

The ADA defines disability as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; 2) a record of such impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff argues that he is disabled under the first and third definitions of disability.

### a. Substantially Limited in a Major Life Activity

Under the first definition of disability, Plaintiff must initially prove that he has a physical or mental impairment. 42 U.S.C. § 12102(2)(A). Plaintiff must then demonstrate that the impairment substantially limits at least one of his major life activities. *Id.* "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Neither party in this case disputes that Plaintiff has an impairment. The parties disagree as to whether Plaintiff has an impairment that substantially limits a major life activity under the first test for disability.

Major life activities constitute tasks central to most people's daily lives. *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 337 (6th Cir.2002). According to the regulations implementing Title II, major life activities include such functions as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 28 C.F.R. § 35.104. This list is merely illustrative and not exhaustive. *MX Group*, 293 F.3d at 337. Other courts have concluded that eliminating waste and eating are major life activities. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001) (determining that eating is a major life activity); *EEOC v. Browning–Ferris, Inc.*, 262 F.Supp.2d 577, 584 (D.Md.2002) (determining that eating and moving one's bowels are major life activities); *Mazza v. Bratton*, 108 F.Supp.2d 167, 174 (E.D.N.Y. 2000) (finding that elimination of waste is a major life activity). HCMC does not challenge Plaintiff's assumption that eating and digestion are major life activities. Rather, HCMC argues that Plaintiff is not substantially limited in these activities. Therefore, for purposes of this motion, the Court assumes that eating and eliminating waste are major life activities.

In order to determine whether or not a particular person is substantially limited in a major life activity, it is necessary to make an individual assessment of the impact of that person's impairment. *Sutton v. United Air Lines*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). According to EEOC regulations, an individual is substantially limited in a major life activity where the individual is "unable to

perform a major life activity that the average person in the general population can perform" or is "significantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 CFR § 1630.2(j) (2001). "[T]he regulations instruct that the following factors should be considered: 'the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.'" *Toyota Motor*, 534 U.S. at 196, 122 S.Ct. 681 (quoting 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii)).

In a similar case involving a plaintiff who suffered from Crohn's disease, Judge Garbis of the District of Maryland concluded that the plaintiff had presented enough evidence to reach a jury on the question of whether she was disabled within the meaning of the ADA. *Browning–Ferris*, 262 F.Supp.2d at 585. The court noted that the plaintiff "suffer[ed] from chronic severe diarrhea", "had several surgeries to drain abscesses in her intestines", and "had part of her intestinal tract removed and had a colostomy bag attached to her colon for the removal of waste from her body." *Id.* The court found that the disease "sharply limits what [the plaintiff] is able to eat" and cited to the plaintiff's deposition, in which she testified that she could not eat fried foods, spicy foods, nuts, chocolate, caffeine, or vegetables. *Id.*

Several other courts have also held that Crohn's disease or similar digestive problems can cause a Plaintiff to be disabled within the meaning of the ADA. *See, e.g., Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir.1998) (finding, without analysis, that the plaintiff, "who suffers

from Crohn's disease, is disabled within the meaning of the ADA"); *Wilder v. Southeastern Pub. Serv. Auth.*, 869 F.Supp. 409, 417 (E.D.Va.1994) ("It is undisputed ... that [the plaintiff's] Crohn's Disease constitutes a disability."); *Mazza*, 108 F.Supp.2d at 174 (finding that a plaintiff with colitis who suffered from symptoms including severe diarrhea, cramps, nausea, bowel urgency, gas, and having to make bowel movements as many as ten times per day had "described severe limitations upon his ability to control elimination of wastes" and created a triable issue of fact as to whether he was disabled).

■ In this case, the list of foods Plaintiff can not eat appears to be at least as extensive as the limitations of the plaintiff in *Browning–Ferris*. Plaintiff suffers from "one of the most virulent forms of Crohn's disease." There is no cure for Crohn's disease, therefore his symptoms will be long term. Plaintiff suffers from severe diarrhea and during flare-ups of his condition he has had to go to the bathroom as many as forty times per day. Additionally, he has been hospitalized several times for bowel obstructions and has required surgery to correct this condition on three separate occasions. Dr. Wruble testified that Plaintiff can not take a lot of medications to treat his Crohn's disease and has failed all immunosuppressant therapy. Dr. Wruble even testified that he considered performing an operation called a blind loop that he had never considered for any other patient, which would require Plaintiff's bowel to be resected and brought out into a bag.

The Court finds that Plaintiff has presented sufficient evidence to allow a reasonable jury to conclude that Crohn's disease causes him to be substantially limited in the major life activities of eating and eliminating waste. Therefore, a reasonable jury could conclude that Plaintiff has

a disability within the meaning of the ADA.

### b. Regarded As Disabled

Although the Court has already determined that Plaintiff has presented sufficient evidence that he has a physical or mental impairment that substantially limits one or more of his major life activities, the Court will briefly address the issue of whether HCMC regarded him as disabled. Under the third definition of disability under the ADA, Plaintiff must show that HCMC *mistakenly* believes that: 1) Plaintiff has a physical impairment that substantially limits one or more major life activities; or 2) Plaintiff has an actual, nonlimiting impairment that substantially limits one or more major life activities. *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139; *EEOC v. Northwest Airlines, Inc.*, 246 F.Supp.2d 916, 924 (W.D.Tenn.2002).

Plaintiff argues that HCMC viewed him as substantially limited in the major life activity of working as evidenced by its decision to terminate his employment when he could not return to work promptly. HCMC admits it knew Plaintiff was temporarily incapacitated. However, HCMC maintains that it did not believe his recovery from surgery meant that he was disabled or substantially limited in the major life activity of working. HCMC points out that Plaintiff's Crohn's disease never negatively affected his work performance prior to the surgery and his supervisors viewed him as an asset to the hospital. He performed all of the functions of his job prior to his leave for surgery. His supervisors wanted him to come back to work after he had surgery. They even asked him to attend HCMC's annual training session while he was on leave to keep up to date.

The Court agrees with HCMC on this point. "The mere fact that an employer is aware of an employee's impairment is in-sufficient to demonstrate that the employer regarded the employee as disabled. An employee who is perceived by his employer as having only a temporary incapacity to perform the essential functions of his job is not perceived as 'disabled' as defined under the Act. 29 C.F.R. Pt. 1630, App. § 1630.2(j) ('temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities')." *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir.1999). "A temporary inability to work while recuperating from surgery . . . does not constitute evidence of a disability covered by the Act." *Lader*, 185 F.3d at 1209 (citing *Gutridge v. Clure*, 153 F.3d 898, 901–02 (8th Cir.1998)).

In short, there is no evidence that HCMC viewed Plaintiff as anything other than temporarily incapacitated due to the surgery. Therefore, he may not proceed under the theory that HCMC regarded him as disabled.

### 2. Otherwise Qualified

The Court next considers whether Plaintiff was otherwise qualified to perform the functions of the communications technician position. To be considered qualified, "an employee must demonstrate that he or she was meeting the employer's legitimate expectations and was performing to the employer's satisfaction." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir.2000). "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998).

HCMC asserts that attendance is an essential function of the communications technician position. HCMC argues that Plaintiff had not been released to work at the time HCMC terminated his

employment. Therefore, he was not qualified for the position because he could not meet the attendance requirements. In response, Plaintiff argues that he could meet the attendance requirement if he had been given a reasonable accommodation. Plaintiff asserts that the reasonable accommodation in his case was a leave of absence for his disability. As Plaintiff correctly notes, under current Sixth Circuit precedent there is no presumption that uninterrupted attendance is an essential job requirement and "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir.1998). Therefore, the relevant questions in this case are whether Plaintiff ever actually requested a leave of absence as an accommodation and, if he did request such an accommodation, whether the accommodation would be reasonable under the circumstances or an undue hardship to HCMC.

### a. Request for Reasonable Accommodation

"Generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.... Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." *Gantt*, 143 F.3d at 1046 (quoting 29 C.F.R. pt. 1630 App. § 1630.9) (internal quotation marks omitted). "There is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee. The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id.* An employee's initial burden of articulating a reasonable accommodation is not an onerous one. *Cehrs*, 155 F.3d at 781.

"The [employee] must merely 'suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" *Id.* (citation omitted).

HCMC argues that Plaintiff never requested a reasonable accommodation. In fact, HCMC maintains that the first time Plaintiff mentioned a disability or reasonable accommodation was at the time he filed the EEOC charge upon which this lawsuit is predicated. On the other hand, Plaintiff argues that his approved use of disability leave in accordance with the guidelines in HCMC's employee benefits handbook was the reasonable accommodation.

■ Attached as Exhibit 9 to Plaintiff's deposition is the initial form signed by Plaintiff and Mr. Perry requesting and approving a leave of absence beginning May 14. Exhibits 10 and 11 are copies of notes from Dr. Wruble stating that Plaintiff was unable to return to work as of May 4, May 14, July 10, and July 17 and requesting that his absence be excused. Plaintiff testified that around July 16, 2001 he inquired about leave policies that would extend beyond the leave he had already taken because he was going to need additional time to get well. On July 30, 2001, Dr. Wruble wrote a letter regarding Mr. Hodge that reads as follows:

> Mr. Hodge has been under my care for Crohn's disease. He has had a flare-up of his symptomatology and is unable to work. At this time we are not able to determine when he will be able to return to work.
>
> If any further information is needed, please give me a call.

(Hodge Dep. Exh. 13.) Dr. Wruble's letter was faxed to HCMC on July 30, 2001.

Viewing the record in the light most favorable to the non-moving party, there is

evidence supporting the proposition that Mr. Hodge, through his own communications as well as those of his physician, requested or sufficiently suggested to HCMC an extension of his leave of absence as a reasonable accommodation for his disability. Therefore, Plaintiff has raised a genuine issue of material fact and summary judgment would be inappropriate on this issue.

### b. Undue Hardship

HCMC argues that an extension of Plaintiff's disability leave of absence was not reasonable in the present case because HCMC was experiencing a hardship due to Plaintiff's absence. "The term 'undue hardship' means an action requiring significant difficulty or expense ..." 42 U.S.C. § 12111(10)(A). The ADA requires the Court to consider the factors listed in 42 U.S.C. § 12111(10)(B) when evaluating a claim of hardship. HCMC bears the burden of proving both that the requested accommodation was unreasonable and that the proposed accommodation imposes an undue hardship in light of the enumerated factors. *Cehrs*, 155 F.3d at 781–782.

The parties dispute whether an extension of Plaintiff's unpaid medical leave imposed an undue hardship on HCMC. HCMC argues that its policy does not guarantee six months of leave. The Partner Benefits and Information Handbook merely provides that any employee is *eligible* to *request* a leave of absence, which will be considered on an individual basis and which can not exceed six months. (Hodge Dep. Exh. 3 at pg. 10.) Moreover, Plaintiff's physician had not cleared him to return to work by August 15, 2001 and stated that he could not determine when Plaintiff would be able to return to work. HCMC notes that a "[r]easonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected." *Gantt*, 143 F.3d at 1047. Although in hindsight, Plaintiff was able to return to work on September 24, before the expiration of six months, HCMC argues that there was no way it could have known at the time Plaintiff was terminated that he would be able to return to work. Furthermore, Mr. Perry and Mr. Garner believed that outsourcing Plaintiff's job would be too expensive and that hiring a temporary employee was not possible.

In response, Plaintiff maintains that HCMC should have allowed him to continue his leave of absence through the end of the six month period specified in the employee benefits handbook. At the time HCMC fired Plaintiff, he was in his fourth month of disability leave. HCMC's employee benefits handbook provides that in the event of a disability, an employee "may be granted a leave for an indefinite period of time not to exceed six months." The maximum six month leave of absence provided in the handbook specifically relates to a disability where "an estimate of duration cannot be made by the physician." When presented with a similar situation, the Sixth Circuit approved of the proposition that "the employer's leave policy provide[s] evidence that a medical leave of absence would not unduly burden the employer." *Cehrs*, 155 F.3d at 782 (citing *Norris v. Allied–Sysco Food Servs., Inc.*, 948 F.Supp. 1418, 1440 (N.D.Cal.1996)).

Plaintiff also argues that during his leave of absence HCMC could have outsourced his work or attempted to hire a temporary communications technician while he was on leave. HCMC did outsource some work while Plaintiff was on leave. Furthermore, Mr. Ledden testified in his deposition that Mr. Perry had the authority to hire temporary employees. Whether an extension of Plaintiff's disability leave of absence in accordance with HCMC's policy constituted a reasonable accommodation in this case, and whether

HCMC experienced a hardship that could not have been remedied by the use of outsourcing or hiring a temporary employee, are questions of fact not appropriate for disposition on a motion for summary judgment. The Court finds that Plaintiff has created a genuine issue of material fact as to whether he is an otherwise qualified individual who could perform the functions of the communications technician position with the use of a reasonable accommodation in the form of an extended leave of absence.

### 3. Adverse Employment Action/Refusal to Accommodate

 Termination unquestionably qualifies as an adverse employment action. *Cicero v. Borg–Warner Auto., Inc.*, 280 F.3d 579, 584 (6th Cir.2002). However, HCMC maintains that although it terminated Plaintiff's employment, Plaintiff did not suffer an adverse employment action in this case because HCMC's employee benefits manual states that an employee on leave is not guaranteed a position on his or her return from the leave of absence. At the same time, HCMC has also argued that it needed to terminate Plaintiff's employment so that it could open up his position to hire someone else. Clearly, HCMC had held Plaintiff's position open for him during the leave of absence. Therefore, Plaintiff suffered an adverse employment action when HCMC terminated his employment and offered his position to someone else. Plaintiff has satisfied the elements of the *prima facie* case that HCMC terminated his employment due to his disability.

As it is clear that HCMC also did not provide Plaintiff with additional disability leave in response to his alleged request, the Court DENIES HCMC's motion for summary judgment as to Plaintiff's claim that HCMC failed to provide him with a reasonable accommodation for his disability.

### 4. Legitimate Non–Discriminatory Reason

With respect to Plaintiff's claim that HCMC terminated his employment due to his disability, once Plaintiff has established a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *Monette v. Elec. Data Systems Corp.*, 90 F.3d 1173, 1179 (6th Cir.1996). If Defendant meets that burden, Plaintiff must show that the proffered explanation is a pretext for unlawful discrimination. *Id.*

 HCMC has offered a legitimate non-discriminatory reason for Plaintiff's discharge. HCMC asserts that it terminated Plaintiff's employment due to the indefiniteness of Plaintiff's leave of absence as indicated in the note from Dr. Wruble. HCMC maintains that it had fallen substantially behind in the type of work Plaintiff had been hired to perform, that it was impractical to outsource or hire temporary help, and that it could not hire someone to perform Plaintiff's job while Plaintiff was still an employee of HCMC. These are legitimate non-discriminatory reasons for Plaintiff's discharge. Thus, the burden shifts to Plaintiff to prove that the stated reasons for his discharge were pretextual.

### 5. Pretext

 An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was insufficient to motivate the decision. *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir.1996). Plaintiff argues that HCMC decided to terminate his employment despite his request for additional leave in accordance with HCMC's own policy. The policy set forth in the employee handbook provides that an employee may be granted up to six months of leave.

HCMC terminated Plaintiff's employment after he had been absent for only four months. Plaintiff argues that HCMC's decision to terminate his employment after it failed to grant leave permitted by its own policy can raise a question of pretext. The Court agrees. The Court DENIES HCMC's motion for summary judgment on the claim of disability discrimination in violation of the ADA.

### B. Tennessee Human Rights Act/Tennessee Handicap Act

 Tennessee Courts look to the Americans with Disabilities Act when interpreting claims under the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101, *et seq.* *Dunn v. Sharp Mfg. Co.*, 2003 WL 1793038, *2, 2003 U.S. Dist. Lexis 6454, *8 (W.D.Tenn. Jan. 9, 2003) (citing *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 706 (Tenn.2000)). Because the Court declines to grant summary judgment in favor of HCMC on Plaintiff's ADA claims, the Court also DENIES Defendant's motion for summary judgment on Plaintiff's Tennessee Human Rights Act claims.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.